FIRST NATIONAL BANK OF SOUTH BEND *v.* MAYR ET AL.

[No. 9,913.   Transferred to Supreme Court June 27, 1919.]

1. PRINCIPAL AND SURETY. — *Release of Surety, — Common-Law Rule.—Technical Release.*—At common law a release of one surety releases all the sureties, but the instrument relied upon to have this effect must be an instrument under seal, and, if not under seal, it is construed as a covenant "not to sue," which is personal to the parties thereto, and operates as a release of the party to whom given, but not of a cosurety.   p. 88.
2. COURTS.—*Appellate Court.—Decisions of Supreme Court.—Conclusiveness.*—A decision of the Supreme Court is binding upon the Appellate Court until overruled.   p. 101.

From St. Joseph Circuit Court; *Walter A. Funk,* Judge.

Action by the First National Bank of South Bend against Frank Mayr, Junior, and others.   From a judgment for defendants, the plaintiff appeals. *Transferred to Supreme Court.*

*Arthur L. Hubbard* and *Samuel B. Pettingill,* for appellant.

*Graham & Crane* and *Cyrus E. Pattee,* for appellees.

ENLOE, J.—This was an action begun by appellant against the appellees, Frank Mayr, Jr., John D. Beitner, Cyrus E. Pattee, E. E. Ash and Frank L. Krug, based upon a certain "letter of credit" agreement, executed February 24, 1914, signed by the appellees, and also signed by G. W. Blair, R. G. Page, F. G. Eberhart, J. Winter, George H. Mayr and C. C. Tiedeman.

The said agreement was as follows:

"Memorandum of Agreement between the First National Bank of South Bend, Indiana, of the first part and the other persons who shall sign this agreement.

"The modern Specialties Manufacturing Company of South Bend, Indiana, desires to borrow not to exceed Fifteen Thousand Dollars ($15,-000.00) of the First National Bank of South Bend, Indiana, and to execute its note or notes therefor at such times and rates as may be agreed upon. Now, In Consideration of any such loan or loans, the undersigned agree with said bank and each other to pay all such loans as shall be evidenced by the promissory note or notes of the Modern Specialties Manufacturing Company executed by its President or Treasurer, and the undersigned as sureties for said Modern Specialties Manufacturing Company do hereby jointly and severally agree to and with said First National Bank to pay all such notes for loans when the same shall become due according to the terms thereof, without relief from valuation or appraisement laws and with all attorney's fees incurred in the enforcement of this contract, and waive presentment for payment, protest and notice of protest and nonpayment of such notes, and that the receipt of interest in advance shall not discharge any of such sureties.

"This shall be a continuing Agreement to secure to said bank the repayment of not to exceed the total loan of $15,000 whenever and in whatever sums made, and all renewals thereof until fully paid.

"Witness our hands this 24th day of February, 1914.

|                |                |
|----------------|----------------|
| "C. E. Pattee, | E. E. Ash,     |
| G. W. Blair,   | Frank L. Krug, |
| J. D. Beitner, | J. Winter,     |
| Frank Mayr, Jr., | F. G. Eberhart, |
| Geo. H. Mayr,  | R. G. Page."   |
| C. C. Tiedeman, |               |

The questions involved in this appeal relate to the action of the court in sustaining separate and several demurrers of appellees to the fourth paragraph of appellant's complaint; the first, second and third paragraphs of complaint having been dismissed before judgment.

This paragraph of complaint, omitting formal parts, was as follows: "Plaintiff for a fourth and further paragraph of complaint alleges and says: That plaintiff is a corporation chartered and organized under the laws of the United States of America, and is engaged in the business of a national bank in the City of South Bend, Indiana. That defendant, Modern Specialties Manufacturing Company, is a corporation organized under the laws of the State of Indiana.

"That heretofore on the 24th day of February, 1914, plaintiff entered into a written contract with defendants, Frank Mayr, Jr., John Beitner, Cyrus E. Pattee, E. E. Ash, Frank L. Krug, together with F. G. Eberhart, George W. Blair, R. G. Page and others, whereby in consideration of loans to be made by plaintiff to defendant company, not exceeding in the aggregate Fifteen Thousand Dollars ($15,000.00) said individual defendants promised and agreed, jointly and severally, to pay plaintiff said loans when the

same should become due, a copy of which contract is filed herewith, marked Exhibit A, and made a part of this complaint. That on said day and ever since then, each of said individual defendants was and is a stockholder, but were not the only stockholders in defendant Modern Specialties Manufacturing Company.

"That thereafter, and at various times, in pursuance with and in consideration of the covenants and agreements in said contract contained, plaintiff loaned defendant company divers sums of money, not, however exceeding Fifteen Thousand Dollars ($15,000.00) in evidence of which said loans defendant company executed, by and through its President or Treasurer, its certain promissory notes and renewals thereof, payable to plaintiff.

"That on May 20, 1916, there was due and owing to plaintiff from the defendant company, as evidenced by its said promissory notes, the sum of Twelve Thousand Four Hundred Eighty and 77/100 Dollars ($12,480.77). That on said day F. G. Eberhart, for and in behalf of himself and R. G. Page and George W. Blair, paid plaintiff the sum of Ten Thousand One Hundred Fifty-four and 31/100 Dollars ($10,-154.31) to apply on, and which plaintiff did apply and receipt on the indebtedness of Twelve Thousand Four Hundred Eighty and 77/100 Dollars ($12,-480.77) then due plaintiff from defendant company. That in consideration of said payment plaintiff executed and delivered to said F. G. Eberhart a certain written instrument in writing, a copy of which is filed herewith, marked Exhibit E, and made part of this complaint.

"That since May 20, 1916, plaintiff has not loaned

defendant company any further sums of money. That on May 20, 1916, defendant company was and now is insolvent. That on May 20, 1916, each of said individual defendants was and now is a resident of the State of Indiana.

"That on said day each of said individual defendants was and now is solvent, and has assets in this State subject to execution under the laws of this state, over and above his liabilities, in a sum sufficient to pay the balance of ——————————— on said day remaining due and owing by defendant company to plaintiff, together with attorney's fees and interest to date.

"That there is now due and owing plaintiff by defendant company the sum of Two Thousand Two Hundred Sixty-nine Dollars and Two cents ($2,269.02), together with interest and attorney's fees, as evidenced by the promissory notes of the defendant company and endorsements thereon, copies of which said notes and endorsements are filed herewith, marked Exhibits B, C, and D, and made a part of this complaint.

"That on the —— day of ———————————, 1916, plaintiff demanded of each of said defendants the payment of said notes and of the full amount thereon due, and that each of said defendants failed and refused to pay the same.

"That a reasonable fee for plaintiff's attorneys herein is Two Hundred and Fifty Dollars ($250.00).

"Wherefore plaintiff sues etc."

To this complaint the above agreement sued on was attached as exhibit A. Copies of said notes mentioned in said complaint were also attached as ex-

hibits to said complaint and marked exhibits B, C, and D. Exhibit E to said complaint was as follows:

"Re: Modern Specialties Mfg. Co.,

"South Bend, Ind., May 17, 1916.

"Mr. F. G. Eberhart,

"Mishawaka, Ind.

"Dear Sir: For and in consideration of the sum of $10,000.00, Ten Thousand Dollars, paid to us, and of the acquiescence therein of those of your creditors for whose benefit substantially all your remaining assets are being transferred to the Continental and Commercial Trust and Savings Bank, as Trustees,—

"We hereby consent to such transfer and agree that neither we nor any assignee of any of our claims against you, will take any action which will have the effect of setting aside or invalidating the transfer to said Trustee.

"In consideration of the above payment we also release and discharge you, R. G. Page and G. W. Blair, from any and all liabilities in connection with the indebtedness of the Modern Specialties Mfg. Co.

"Very truly yours,

"First National Bank of South Bend,

"By Chas. L. Zigler, Cashier.

"South Bend National Bank,

"By Myron Campbell, Cashier."

To this paragraph of complaint the appellees separately and severally demurred, and separately and severally filed with said demurrer memorandum, as required by statute, the substance of which said memorandum is as follows:

"Each defendant says that the said written instrument set forth in said paragraph of complaint as Exhibit "E," is a release and discharge, and, by the terms of said written instrument as set forth as Exhibit "E," said plaintiff released and discharged the said F. G. Eberhart and R. G. Page and George W. Blair, and each of them, from any and all liability in connection with the said indebtedness of the Modern Specialties Manufacturing Company and released and discharged the said F. G. Eberhart and R. G. Page and George W. Blair, and each of them, from any and all liability on the said contract of suretyship as sued upon in said fourth paragraph of complaint and set forth as Exhibit "A."

"Each defendant further says that by the terms of said suretyship contract set forth in said paragraph as Exhibit "A," the said F. G. Eberhart and R. G. Page and George W. Blair, and each of them were cosureties of each of these defendants and equally bound with each of these defendants to pay to plaintiff the said principal obligation of the Modern Specialties Manufacturing Company.

"That the execution and delivery of said written instrument, set forth in said paragraph of complaint, as Exhibit "E," to the said Eberhart, and the said release and discharge of said F. G. Eberhart, R. G. Page and George W. Blair, from any and all liability in connection with the indebtedness of the defendant, Modern Specialties Manufacturing Company, and from any and all liability on said contract of suretyship, released and discharged each of these defendants from any and all liability on said contract of suretyship as sued upon in said paragraph of plaintiff's complaint.

"That by reason of the premises each of these defendants is not now liable to plaintiff by reason of said contract of suretyship as sued upon in said paragraph of complaint as Exhibit "A."

The demurrer being sustained, appellant refused to plead further, and judgment was rendered against it—that it take nothing by its complaint, and that appellees recover their costs. From this judgment, this appeal is prosecuted.

The only error assigned is the action of the court in sustaining said demurrers of appellees to said paragraph of complaint.

The question, and the only question presented for our consideration on this record, is as to Exhibit E. What is its legal force and effect—a "release," or a covenant "not to sue"?

It was and is the rule at common law that a "release" of one surety released all the sureties, but the instrument relied upon to have this effect

1.   must have been of the kind spoken of in the books as a "technical release"—an instrument under seal. *Dean* v. *Newhall* (1799), 8 T. R. 168; *Walker* v. *McCulloch* (1827), 4 Greenl. (Me.) *421; *McAllister* v. *Sprague* (1852), 34 Me. 296; *Rowley* v. *Stoddard* (1810), 7 Johns. (N. Y.) 207; *Shaw* v. *Pratt* (1839), 22 Pick. (Mass.) 305; *Jackson* v. *Stackhouse* (1823), 1 Cow. (N. Y.) 122, 13 Am. Dec. 514; *Tharpe* v. *Tharpe,* 1 Ld. Raymond 235.

This, because the seal affixed to the release furnishes a conclusive presumption that the releasor has been fully satisfied, and the inevitable conclusion drawn from that proposition is that the releasor, having received full satisfaction, could have no further right of action against anybody. L. R. A. 1915 E

807, note. And if the instrument relied upon as such release was not under seal, then it was construed as a "covenant not to sue," which was personal to the parties thereto, and, to avoid circuity of action, operated as a release of the party to whom given, but did not operate as a release of a cosurety or cosureties. *Parmelee* v. *Lawrence* (1867), 44 Ill. 405, and authorities, *supra.*

The rights of the parties in cases such as the instant one has been well stated by the Supreme Court of Arkansas in the case of *Gordon* v. *Moore* (1884), 44 Ark. 349, 51 Am. Rep. 606, where the court said:— "As to Moore all were principals from the beginning, inasmuch as he had the right to collect the debt of all or either. He was only required to take cognizance of their relation to the extent of avoiding any act which would prejudice the rights of the sureties to obtain exoneration from the principal, or contribution amongst themselves. * * * Sureties *inter sese* are joint obligors; all secondarily liable together. Their mutual rights and obligations were first determined in the courts of chancery and enforceable there alone. It is still the more appropriate forum, from its more flexible means of adjustment; but courts of law have long assumed a concurrent cognizance of these rights and will enforce them as defenses. * * * The right of a surety compelled to pay a debt as against his cosurety is not exoneration of the burden. It is his as much as his fellow's. It is the right of contribution, the right to recover from his cosurety just so much as will make both equal in the loss. It is obvious that by the discharge of one surety the others are injured (or would be) just to the extent of their right of contribution.

* * * This mode of adjustment injures no one. Its plain common-sense equity commends itself to every man's sense of right, and is harmonious with the well-settled rule that the release of the principal discharges the surety altogether, because it takes away the right to exoneration. When the relief goes beyond the injury it becomes technical and arbitrary.''

The doctrine that, where one or more of several cosureties has paid his or their full proportion of the debt in question, and were given a simple release from all further liability to pay said debt, such instrument shall be construed only as a covenant not to sue, and does not release the cosureties, is recognized and declared to be the law in many jurisdictions. See 34 Cyc 1084 for authorities.

In *Parmelee* v. *Lawrence, supra,* the instrument was as follows: ''Received, Boston, August 12th, 1864, twenty-two thousand five hundred and fifty-seven dollars, of Liberty Biglow, in full payment of his portion of all money due me on articles of agreement between myself, him, (said B.), F. Parmelee, D. A. Gage and W. S. Johnson, dated September 15, 1856, and recorded in the recorder's office of Cook county, Illinois, October 17th, same year, in book 171 of deeds, page 71; and I release and discharge said Biglow, his property and estate, from all claims on account of same.

''If the property mentioned in the above articles has to be sold under any order of the court at Chicago, the interest of said Biglow in it is to be protected according to this settlement. Nothing herein contained shall in any wise affect my rights or de-

mand against said Parmelee, Gage or Johnson, or their interest in said property.

(U. S. Rev. Stamp.)

Daniel Lawrence. (Seal).''

The court in declaring the legal effect of the foregoing instrument said: ''The weight of the modern authorities is * * * in favor of the more reasonable rule, that where the release of one of several obligors shows upon its face, and in connection with the surrounding circumstances, that it was the intention of the parties not to release the co-obligors, such intention, as in the case of other written contracts, shall be carried out, and to that end the instrument shall be construed as a covenant not to sue.''

This case is followed and approved in subsequent decisions of that court, and has also been cited as authority by the Supreme Courts of both Maine and New Hampshire.

In the case of *Dean* v. *Newhall, supra,* the instrument sued on was a joint and several bond by one Taylor and Newhall to pay plaintiff Dean £200 on a day certain. Taylor became insolvent and assigned all his effects to F. and B. in trust for themselves and all other creditors who should execute the deed. Plaintiff, one of the creditors, executed the deed and received a dividend under it of £48. In the deed was contained a covenant that: '' 'They would not sue, arrest, implead or prosecute Taylor, his executors, or administrators, or his or their goods, &c., for or on account of any debt, &c., and in case any of the said creditors should sue, &c., those presents should be a sufficient release and discharge to all intents and purposes both at law and in equity to and for the said C. Taylor, his executors, &c., and he and they should

be and were thereby acquitted, released and discharged against them, the said creditors, &c., and as such should and might be pleaded in bar by him, the said C. Taylor, &c.' " The defense was that as Taylor was released, Newhall was also released. Lord Kenyon held the above to operate as a covenant not to sue, and that plaintiff was entitled to judgment against Newhall.

In the case of *Rowley* v. *Stoddard, supra,* the Stoddards were indebted to Rowley on a note for $200. The elder Stoddard paid $100 and took a receipt from Rowley, "in full of all demands" against him, the elder Stoddard. The receipt having been pleaded, as a release, the court said: "The settlement made in the case before us is somewhat in the nature of an agreement not to prosecute the elder Stoddard. But a technical *release under seal* is necessary to be given to one of several debtors, in order that the others may avail themselves of it as a discharge."

In *Shaw* v. *Pratt, supra,* it was said that, at common law, the instrument relied upon as a release of one, to effect the release of all sureties or joint and several makers, must have been a technical release under seal.

In this case, which was an action upon a promissory note, signed by John and John B. Pratt, the holder executed an instrument as follows: " 'In consideration * * * I hereby agree and bind myself and my heirs to discharge the note, being a joint and several one, signed by John Pratt and John B. Pratt, and held by me, so far as John B. Pratt is or may be liable to pay the same, except that this agreement shall not operate in any way to discharge or affect the suit already begun by me against John Pratt, and

for which a farm on New Ashford has been attached on said note.' ''

In the case of *Couch* v. *Mills* (1839), 21 Wend. (N. Y.) 424, and which was an action upon promissory notes made by the defendants, the plea interposed by defendant Mills was in substance as follows: That the plaintiff by a certain writing under seal, in consideration of $500 paid to him by Henry Talmage, one of the defendants in said action, covenanted and agreed with said Henry Talmage that neither he, the plaintiff, nor his executors, etc., should at any time or times thereafter sue the said Henry Talmage, or levy upon his goods or chattels for or by reason or in consequence of the promises and undertakings in this declaration in this case mentioned; and in case any proceeding, either at law or in equity, should be had, continued, or prosecuted, then that the said writing should be deemed to all intents and purposes a release to him, the said Henry Talmage, from and against the same; that the plaintiff continued and prosecuted his suit against said Henry Talmage, contrary to said covenants in said writing contained, whereby the said writing became and was and is an absolute release and discharge to the said Henry Talmage, and the other defendants in this suit.

To this plea, in sustaining the demurrer thereto, the court said: "The language of the instrument, as set forth, is undoubtedly very particular; but it is manifest, from the whole scope of it, that it was not intended to have the operation and effect of a technical release upon the subject-matter of the suit; but only to protect the rights of the covenantee, * * * to construe it into a technical release of all, would be carrying the obligation beyond the ob-

vious intent of the parties. If it had been intended to be so understood, more direct and pertinent language would have been used."

In *Jackson* v. *Stackhouse, supra,* Thurman and Stackhouse had executed a bond. Upon this bond was the following indorsement: " 'I, Nicholas Rosevelt, do hereby fully release and discharge the within named obligor, James L. Thurman, from all liability on the within bond, and rely on the mortgage given with the bond, as my security for the payment of the money mentioned in the bond. January 21st, 1817.

'Nicholas Rosevelt.' "

The court in passing upon the matter said: "The endorsement on the bond by Rosevelt was intended to discharge Thurman from personal liability only, and that the mortgage should remain a lien on the land. It may be questioned, whether the writing can have any effect. A release, not by deed, and without consideration is void, * * * no consideration is stated, and it is not under seal; if it had been, it would be construed as a covenant not to sue Thurman, and operate as a release to avoid circuity of action."

The case of *Walker* v. *McCulloch, supra,* was an action upon a promissory note, executed by McCulloch, Jonas Clark and Henry Clark. The note bore the following indorsement: " 'April 2d, 1821. Received of Jonas Clark one-third of the amount of the within note and interest, and he is hereby discharged from the same.' " It was insisted that this was a release, and that thereby all parties to said note were released. In passing upon the question the court said: "It is not under seal, and therefore is not a

technical release. It might have been explained by parol evidence as other receipts are explainable. * * * The receipt in question cannot amount to more than a perpetual covenant for the benefit of Jonas Clark. * * * Nothing short of payment by one of several joint debtors, or a release under seal, can operate to discharge the other debtors from the contract.

The case of *McAllister* v. *Sprague, supra,* was an action in assumpsit against joint debtors. The instrument relied upon as a release was as follows: " 'Received of Jotham L. Sprague one red horse (described), in full for his half of our account against him and E. L. Murphy, * * * to be his discharge in full for debt and cost, but no discharge for Murphy.' "

It was contended that this instrument should be given the effect of a formal release, but the court said: "But the receipt in this case was not a technical release, it was not under seal, and if it had been, it could not fairly be understood to mean that the whole debt should be discharged by the present release of Sprague. Its language does not imply an intention to cancel the whole debt, although the consideration might be adequate for that purpose and also to release Sprague, without its being under seal. Such effect might have been given to it, if it had been so intended." The receipt was declared to be in effect a covenant not to sue Sprague, and that Murphy was not thereby released.

In Indiana, the leading case upon the question now under consideration is *Stockton* v. *Stockton, Jr.,* (1872), 40 Ind. 225, and Alabama seems to be the only state whose decisions are in harmony with those of Indiana.

The Stockton case was a suit upon a note for $2,400 and due in twelve months. Lawrence B. Stockton was principal; one Moore and William and Martin Stockton were sureties thereon for said Lawrence. Before maturity, Moore paid, by giving an order for the amount, $500, the holder agreeing, in consideration thereof, to release him from all further liability thereon. Held, the release of Moore released the other sureties. Citing *Aylesworth* v. *Brown* (1869), 31 Ind. 270.

In the Aylesworth case, *supra,* Barbee, Brown and Company held a judgment against Frederick Geiger and James Fallis for $6,115.68; Geiger paid one-half thereof, and an instrument was executed, which the court construed as a covenant by Barbee, Brown and Company not to pursue Geiger further in the collection of the judgment. The court, in speaking of the contention of the respective parties, said: ''The general proposition is familiar, that the release of one of several joint debtors is a release of all the others; and the appellant contends that that proposition is applicable in this case. This is not technically a release.''

The Aylesworth case we next find cited in the case of *Paul, Admr.,* v. *Logansport Nat. Bank* (1877), 60 Ind. 199. In this last case one Orton had executed his promissory note for the sum of $2,000, with Paul and Reynolds as sureties thereon, payable to one Murdock ninety days after date. Eight days after this note became due said Reynolds made an assignment of all his property for the benefit of creditors. The deed of assignment stipulated that the trustee complete the execution of the trust within three years. Afterwards Paul, the other surety, died, and the

note was filed by the bank as a claim against his estate.

The appellant administrator urged two propositions for a reversal of the case, viz.: "1. That the assent to the assignment of Reynolds, by the bank, operated as an agreement not to sue him for three years, and that the rights of his cosurety, Paul, were injuriously affected thereby; and, 2. That said assent operated as a release of said Reynolds, one of the makers of a joint note, and that that release was, in law, a release of all the makers of said note."

In passing upon the question, the court said: "If the act of the bank, in assenting to the assignment, operated as an agreement not to sue for three years, as to which we express no opinion, that agreement was no bar to a suit within that period of time. (Citing authorities.) As to the second point, it is true that a release of one of the makers of a joint obligation may release all (Citing 1 Parsons, Contracts 27, and the Stockton case, *supra.*) But this principle has no application to the case before us."

The Aylesworth case is next cited in the case of *Walls* v. *Baird* (1883), 91 Ind. 429. In this last case there was a note for $1,868.50, executed by Lane and Walls, partners, to Baird. They dissolved their partnership business, and later Baird, in consideration of $381.38 paid to him by said Lane, and the surrender of a certain other note, released Lane "of any further obligation of security to said note." Afterward Baird sued Walls for the balance due on said note and to foreclose the mortgage executed by Walls and Wife to secure the payment thereof, in which mortgage they had expressly agreed to pay said note, and the court said, citing the Aylesworth case:

"The law is well settled that the unconditional release of one or more of joint obligors releases all the joint obligors. * * * But we do not see that these questions are well presented."

The case of *Tyner* v. *Hamilton* (1875), 51 Ind. 259, is another case in which the doctrine as to the release of one surety releasing the other sureties is announced. In this case it appears that one Margaret Hamilton had been the guardian of one John W. Hamilton; that as such guardian she sold lands belonging to her ward, and received a promissory note in payment therefor; that she afterwards purchased lands in her own name, and used the note so received in payment for lands of her ward, so sold by her, in part payment for lands so purchased by her; that after the said ward became of full age, for a valuable consideration he did "ratify and confirm the said act of my said guardian in so investing said money, and release any and all right of action I may have against said Parkison or Pace, or either of them, on account of said act of my said guardian, as sureties on my said guardian's bond, or otherwise. But nothing herein contained is to be construed as a release of John J. Phillips on said bond." The suit was brought against Margaret Hamilton, the former guardian, and against one Tyner to recover the value of the note belonging to said ward, and used by her in part payment of the lands so purchased by her, she having turned said note over to one Phillips, and he to said Tyner. Tyner was not a surety on said guardian's bond. There was a judgment against Tyner, and he appealed. The question presented to the court was the legal effect of the ratification by said ward of the use of said note so made by his said

guardian.   The court held that the ratification by said ward, after he became of full age, with full knowledge of all the facts, was a bar to the action. This was the only question in issue.   On petition for a rehearing the court said, "A·release of one or more of the joint obligors in a bond is a release of all."   Clearly this was pure *dicta.*

The Stockton case is also cited in the case of *Erwin* v. *Scotten* (1872), 40 Ind. 389.  This last was an action by Scotten as administrator, upon a joint promissory note, signed by William P. Erwin, William Comer, and Edwin Erwin.   Process had been served upon William P. Erwin and William Comer, but not on Edwin Erwin.   Judgment was rendered against the two defendants served, and afterwards the plaintiff filed his petition asking that said Edwin Erwin be served with process etc., and that he be made a party to said judgment theretofore obtained.   The action was brought, and was then pending in the Wayne County Court of Common Pleas, and the defendant, after being served with process, entered his special appearance and filed answer in which he alleged that he was and had been, etc., a resident of Huntington county; that the note was a joint note, and plaintiff had already taken a joint judgment against the other two makers thereof, etc.; and that the court was without jurisdiction over him.   A demurrer to this answer was sustained, and this was the only question presented by the record on appeal.   In the opinion of the court, p. 399, in discussing the effect of a statutory provision, the court said: "We have, in the case of *Stockton* v. *Stockton, ante,* p. 225, applied the principles of the common law to a joint obligation by holding that the release of one joint obligor was a release of all the other joint obligors."

An examination of the authorities reveals the fact that at common law the only release, given by the creditor to one or more sureties, upon a written obligation to pay money, as such, which had the effect of discharging all the sureties thereon, was a "formal" release, a "technical" release, to wit, an instrument under seal, and it was given that effect for the reason hereinbefore stated. The confusion seems to have arisen from a loose use of the word "release," in not confining it to its original meaning of having reference to sealed instruments only.

It has been argued by counsel that the release of one surety by an instrument such as the one involved in this case discharges the other sureties, because such a release changes their contract. With this statement we cannot agree. So far as the sureties are concerned, they have first a contract with the holder of the instrument by which they and each of them agree to pay such holder the entire amount of said contract indebtedness, it remaining unpaid. As between them and each of them, and their principal debtor, the law implies on his part a promise to exonerate them, and each of them, for, and to the amount of, any money that they or either of them may be called upon to pay to such holder, in discharge of such obligation, while, as between such sureties, the law implies on the part of each of them a promise to contribute his proportional part of such indebtedness based upon the number of solvent sureties, as any of his cosureties is called upon to pay. But this promise the law only implies, or raises, as against him, after there has been a payment by his cosurety, or cosureties, of more than their full proportionate part or parts of such indebtedness, determined as

aforesaid. The first above-mentioned contract is express. The other two agreements are implied in law. If one of such sureties pays to the holder of such instrument his full proportionate part thereof, clearly his cosurety, or cosureties, cannot call upon him for contribution, upon their paying the balance, for he has already fully discharged his obligation, and under the circumstances the law will not imply a promise on his part to contribute to his cosureties, and, if there is no such promise, we fail to see wherein the alleged contract has been changed, and, if such contract has not been changed as to such surety, we see no legal or valid reason for holding the cosurety in such case discharged.

Blackstone, Book 1, p. 70, says: "And hence it is that our lawyers are with justice so copious in their encomiums on the reason of the common law; they tell us, that the law is the perfection of reason, and that it always intends to conform thereto, and that what is not reason is not law."

We are of the opinion that the demurrer in this case should have been overruled; that the complaint herein states a cause of action; but, as the ruling of the court herein seems to be in harmony with *Stockton* v. *Stockton, supra,* and that case being now binding upon us, we are without power to reverse this case. We therefore transfer it to the Supreme Court for their consideration, and respectfully recommend that the said Stockton case be overruled, so far as it may be held to be applicable to parol, or simple releases.